The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Joseph L. WHALEY, Defendant–Appellant.

No. 05CA0015.

Colorado Court of Appeals, Div. V.

Nov. 16, 2006.

Rehearing Denied Jan. 25, 2007.

name difference." The physician further testified that Vicodin and Lorcett are "essentially interchangeable," and that he would occasionally authorize a pharmacist to fill a prescription for Vicodin with Lorcett.

A pharmacist testified that, on October 22, 2003, she received a telephone message prescribing Lorcett for defendant from a person representing himself to be defendant's physician. The pharmacist, who had previously spoken with defendant, thought that she recognized the voice on the message as being that of defendant.

The pharmacist deleted the voice message and called the physician, who told her that he had not phoned in the prescription for Lorcett. The pharmacist then called the police.

Later that day, defendant entered the pharmacy and asked the pharmacist for his prescription. While defendant was waiting, two police officers approached him, interviewed him, and then arrested him.

At trial, one of the police officers testified that defendant had initially admitted that he had posed as the physician and called in the Lorcett prescription, but defendant later "changed his story" and claimed, both orally and in his written statement, that he had not impersonated a physician and had merely called in a refill for a prescription. Similarly, the second officer testified that defendant told him he had called in a refill.

John W. Suthers, Attorney General, Rebecca A. Adams, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Douglas K. Wilson, Colorado State Public Defender, Todd E. Mair, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge FURMAN.

Defendant, Joseph L. Whaley, appeals the judgment of conviction entered upon a jury verdict finding him guilty of attempted unlawful possession of a schedule III controlled substance (hydrocodone). We reverse and remand for a new trial.

A physician testified that he prescribed Vicodin for defendant on September 23 (thirty units, with one refill), October 13 (sixty units, with one refill), and October 15, 2003 (forty units, with one refill). The physician explained that the narcotic ingredient in Vicodin is hydrocodone, and that "Lorcett is basically the same as Vicodin, it's a brand

## I.

■ Defendant first argues that his conviction must be reversed because the jury was not instructed that, to find him guilty, it had to find that his attempt to possess the schedule III controlled substance was not pursuant to a lawful prescription. We agree.

■ "A trial court has a duty to instruct the jury correctly on the law applicable to the case." *People v. Weinreich*, 119 P.3d 1073, 1076 (Colo.2005).

Here, defendant was charged with attempting to violate the following provision: "Except as authorized by part 3 of article 22 of title 12, C.R.S., or by part 2 or 3 of this article, it is unlawful for any person knowing-

ly to . . . possess . . . a controlled substance." Section 18–18–405(1)(a), C.R.S.2006; *see* § 18–18–205(1)(b), C.R.S.2006 ("[a] substance shall be added to schedule III . . . when . . . [t] he substance has currently accepted medical use in treatment in the United States"); *see also* § 18–2–101(1), C.R.S.2006 ("A person commits criminal attempt if, acting with the kind of culpability otherwise required for commission of an offense, he engages in conduct constituting a substantial step toward the commission of the offense.").

Title 18, article 18, part 3 (incorporated by reference in § 18–18–405(1)(a), as set forth above) provides, in relevant part, that a person may "lawfully possess controlled substances under this article" if he or she is "in possession of any controlled substance pursuant to a lawful order of a practitioner." Section 18–18–302(3)(c), C.R.S.2006.

During the instruction conference, defendant objected to the instruction defining the offense because it did not inform the jury that, to find him guilty, it had to find that his attempt to possess the controlled substance was unlawful. Alternatively, defendant asked the trial court to instruct the jury that obtaining a controlled substance pursuant to lawful prescription was an affirmative defense. The trial court denied the requests, reasoning that unlawfulness was not listed as an element in the statute defining the offense.

The court's instruction defining the offense provided as follows:

The elements of [the] crime of attempt to commit criminal possession of a controlled substance are:

1. that the defendant,

2. in the State of Colorado, at or about the date and place charged,

3. knowingly

4. engaged in conduct constituting a substantial step toward the commission of possession of a controlled substance, hydrocodone.

Although the court also provided the jury with instructions defining the terms "knowingly," "substantial step," "possession," and "controlled substance," none of these definitional instructions contained any language

making reference to the distinction between unlawful possession of a controlled substance and lawful possession of a controlled substance pursuant to a valid prescription.

On appeal, the People concede that "the court should have given a supplemental instruction . . . that more adequately explained the . . . statutory exception." However, the People contend the prescription exception is not an affirmative defense. We disagree.

■■■ "Statutory interpretation is a question of law that is reviewed de novo. Reviewing courts must give effect to the General Assembly's intent when they construe statutes, looking first to the statute's plain language. If a statute is clear and unambiguous on its face, a reviewing court need not look beyond the statute's plain language." *People v. Rieger*, 128 P.3d 295, 296 (Colo. App.2005) (citations omitted).

When an exception is included in a statutory section defining the elements of the offense, it is generally the burden of the prosecution to prove that the exception does not apply. However, when an exception is found in a separate clause or is clearly disconnected from the definition of the offense, it is the defendant's burden to claim it as an affirmative defense. *See Wharton's Criminal Procedure* § 268 (13th ed.1989); *Wharton's Criminal Evidence* § 20 (13th ed.1972). This rule of construction is widely recognized in other jurisdictions. . . . *See State v. Vasquez–Rubio*, 134 Or.App. 646, 897 P.2d 324 (1995) [*aff'd*, 323 Or. 275, 917 P.2d 494 (1996) ]; *State v. Litterell*, 800 S.W.2d 7 (Mo.Ct. App.1990); *State v. Clarke*, 302 S.C. 423, 396 S.E.2d 827 (1990); *State v. Robarge*, 450 So.2d 855 (Fla.1984); *Jacobs v. United States*, 436 A.2d 1286 (D.C.1981); *State v. Segovia*, 93 Idaho 208, 457 P.2d 905 (1969). *People v. Reed*, 932 P.2d 842, 844 (Colo.App. 1996); *see also People v. Huckleberry*, 768 P.2d 1235, 1239 (Colo.1989)(an affirmative defense justifies the conduct on grounds deemed by law to be sufficient to render the participant exempt from criminal responsibility).

Here, the first clause of § 18–18–405(1)(a) states that the statute is not violated if cer-

tain exceptions apply. It is significant, however, that § 18–18–405(1)(a) does not define those exceptions.

Because the prescription exception referenced in § 18–18–405(1)(a) is located in a different part of article 18, *see* § 18–18–302(3)(c), we conclude this exception is in reality an affirmative defense, notwithstanding the fact that the General Assembly did not label it as such. *See People v. Reed, supra* (holding that the separate codification of the marijuana research exception in Colo. Sess. Laws 1992, ch. 71, § 18–18–406(10) at 361, established it as an affirmative defense, and rejecting the argument that the absence of the phrase "affirmative defense" is determinative).

Next, we turn to the question of whether, based on the evidence presented, defendant was entitled to a jury instruction concerning this affirmative defense. We conclude that he was.

■■■ "If the prosecution or the defendant presents any credible evidence that an affirmative defense might apply, the prosecution has the burden of proving the nonexistence of that affirmative defense beyond a reasonable doubt." *People v. Reed, supra,* 932 P.2d at 844; *see* § 18–1–407(2), C.R.S. 2006.

> The prosecution bears [the burden of disproving an affirmative defense that is supported by the evidence] because a defendant's constitutional right to due process requires that the state prove beyond a reasonable doubt the facts concerning all of the elements of the offense, and a properly raised affirmative defense is treated as though it were another element of that offense. If the trial court errs in disallowing an affirmative defense, then it improperly lowers the prosecution's burden of proof. Because a defendant's constitutional right to due process is violated by an improper lessening of the prosecution's burden of proof, such error cannot be deemed harmless.

*People v. Garcia,* 113 P.3d 775, 784 (Colo. 2005) (footnotes and citations omitted). Whether sufficient evidence exists to support an affirmative defense instruction is a ques-

tion of law for the court to decide. *People v. Hill,* 934 P.2d 821, 826 (Colo.1997).

Here, the People do not dispute that the evidence clearly implicated the applicability of the prescription affirmative defense. To the contrary, during oral argument before this court, the People stated: "That is the only thing that they were there talking about. There wouldn't have been a need for a trial otherwise. The entire scope of this trial was did he call in acting [as] this doctor, or did he call in asking for a prescription?"

Thus, we conclude the trial court erred by refusing to instruct the jury that it was the prosecution's burden to disprove, beyond a reasonable doubt, evidence that defendant attempted to gain "possession of the controlled substance pursuant to a lawful order of a practitioner." Section 18–18–302(3)(c). By not submitting such an affirmative defense instruction, the court deprived defendant of the opportunity to have the jury make a finding concerning the central contested question. Indeed, under the instructions given, the jurors could have concluded that they were obligated to find defendant guilty even if they were persuaded that he had acted pursuant to a lawful prescription. Accordingly, defendant's conviction must be reversed.

## II.

In light of the foregoing disposition, we need not address defendant's claim that the prosecutor committed reversible error during closing argument.

The judgment is reversed, and the case is remanded for a new trial consistent with the views expressed in this opinion.

Judge DAILEY and Judge HAWTHORNE concur.